UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND L. RAUCH,

        Petitioner,

v.                                         Case Number 04-10351
                                         Honorable David M. Lawson

PAUL H. RENICO,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Raymond L. Rauch, presently confined at the St. Louis Correctional Facility

in St. Louis, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  The petitioner was convicted of first-degree criminal sexual conduct in Osceola

County, Michigan circuit court and sentenced to imprisonment for twenty to seventy years.  The

petitioner alleges that he is incarcerated in violation of his constitutional rights to a fair trial, a

verdict based on sufficient evidence, and a proportionate sentence.  The respondent has filed an

answer to the petition asserting that the petitioner's claims are unexhausted, procedurally defaulted,

and without merit.  The Court finds that the claims lack merit and therefore will deny the habeas

petition.

I.

      The petitioner was charged with one count of first-degree criminal sexual conduct, Mich.

Comp. Laws § 750.520b(1)(b) (sexual penetration with a person who is thirteen to fifteen years of

age and a member of the same household).  The State alleged in an information that the petitioner

engaged in oral sex with his adopted daughter, just before her sixteenth birthday, in September or

October of 1995. The victim's date of birth is November 13, 1979, and the exact date of the incident

was contested at trial since victim's age of less than sixteen years was an essential element of the charged offense. The petitioner denied that the acts took place, and advanced the theory that the victim's boyfriend had controlled her and was trying to get revenge against the petitioner. The petitioner also noted that the victim could not remember if the alleged acts took place before or after her sixteenth birthday and had given inconsistent testimony as to the date of the act.

Michelle Knapp, the victim, formerly known as Michelle Rauch, lived with her mother and the petitioner at the time of the incident. The petitioner was her mother's husband and her adoptive father. At trial, Ms. Rauch was questioned on the date of the incident when the State's attorney asked her the following leading question: "Do you recall an incident that occurred between you and Mr. Rauch that occurred in September or October of 1995?" Ms. Rauch testified that she did. Trial Tr., Vol. I, 187-88, Oct. 30, 2001. She explained,

> I recall I wanted to go to a dance at school, and I was told that I could not go. So I decided to go in the bathroom for a while. And, after a while, Mr. – Ray came into the bathroom and told me that there was a way that I could go to the dance. And, by that way, he meant doing a sexual favor for him.

*Id.* at 188. She then testified that she was permitted to attend the dance after she performed fellatio on the petitioner. *Ibid.* She testified that she could not remember which dance it was, but that it "could have been" the homecoming dance. *Id.* at 210-11. On cross-examination, she admitted that during her preliminary examination testimony, she stated that she was "about 16" at the time of the incident, but explained that she does not have a very good memory of the incident, and that this answer was a "guesstimation." *Id.* at 212. She also stated that the incident occurred she was just about to turn sixteen or that it was possible that she was sixteen. *Id.* at 212-13.

Following an overnight recess, on the State's redirect examination of the witness:

Q:    When did [the incident] occur?

A:      The end of September, early October.
Q:      Of what year?
A:      1995.
Q:      When did you turn 16?
A:      1995.
Q:      On November 13th of 1995?
A:      Yes, ma'am.
Q:      Are you absolutely sure this incident that you've told this jury about occurred prior
        to your 16th birthday?
A:      Yes, ma'am.
. . .
Q:      Are you absolutely sure it happened before your 16th birthday?
A:      Yes, ma'am.
Q:      How do you know that?
A:      Because I remember the dance.  And I have looked into the dance, and the
        dance happened before I turned 16.

Trial Tr., Vol. II, 23-25, Oct. 31, 2001.  On the defendant's re-cross, the victim stated that she had

asked the prosecuting attorney, who "had found out when the dance was." *Id.* at 36.  Ms. Rauch also

said that although she still did not know exactly when the dance was, she believed it was late

September or early October, and that this was verified by two of her friends. *Id.* at 37, 39.  She also

stated that during the preliminary examination, she was unaware that she had to be under sixteen for

the allegations to constitute a crime, but that she had become aware of that fact prior to trial. *Id.* at

35-36.

        Sonya Curtis, a long-time friend of Ms. Rauch, testified for the prosecution.  She testified

that Ms. Rauch came to the homecoming dance in the fall of 1995 crying. *Id.* at 206-07.  She stated

that the homecoming dance was in late September or early October, because "it was a homecoming

dance, and homecoming dances happen at the end of September, beginning of October." *Id.* at 207.

The investigator, state police trooper Shelley Izzard, contacted the superintendent of Ms. Rauch's

high school and testified that he was told that the homecoming dance was held on September 23,

1995.  Trial Tr., Vol. III, 8, Nov. 1, 2001.

The State introduced evidence of prior interactions between the petitioner and Ms. Rauch. Ms. Curtis testified that she once witnessed the petitioner climb into the shower with Ms. Rauch naked when Rauch was eleven or twelve. Trial Tr., Vol II., 202. She also saw the petitioner climb into bed with Ms. Rauch while he was naked. *Id.* at 204.

The State also introduced evidence of gifts that the petitioner gave to the victim throughout her life. The victim testified that the petitioner would buy her articles of clothing. She testified that he gave her a genie outfit, although she could not recall when, and that she would pose for pictures while wearing it. Trial Tr., Vol I, at 195. She also testified that she received a nightie from the petitioner when she was 11 or 12, and she modeled it for him and he "probably" took photographs of her wearing it. *Id.* at 196-97. The petitioner also at some point bought her stockings and a negligee, which she modeled for the petitioner. *Id.* at 199. Ms. Curtis also testified that Ms. Rauch would dress up in lingerie and swim wear and pose provocatively for her father, who often took photographs, throughout the time that she was eight years old until she was fifteen years old. Trial Tr., Vol II, 199. The petitioner categorically denied these claims. Trial Tr., Vol. III, 123-24.

The petitioner had filed a pretrial motion *in limine* to exclude evidence of these prior acts. The petitioner argued that it was a violation of Michigan Rule of Evidence 404(b), because the related acts took place long before the alleged incident in 1995, and the evidence was unfairly prejudicial. Trial Tr., Vol I, 156. The trial court denied the motion, reasoning that Michigan law permits these acts to bolster the victim's credibility, and that they were relevant and not substantially outweighed by prejudice. *Id.* at 163. The court invited the petitioner to submit a proposed cautionary instruction on the related acts. *Id.* at 167-68.

During closing argument, the prosecution emphasized that the incident occurred on September 23, 1995:

> [Ms. Rauch] told you about an incident that occurred on September 23, 1995, homecoming dance. That's what this case is about. And I admit to you that this case is not about whether Mr. Rauch, the defendant, got in the shower with Michelle, whether he climbed into bed with her with a dildo while he was naked. It's not about whether he took photographs, it's not about whether he provided her with alcohol. It's about what happened on September 23, 1995.

Trial Tr., Vol III, 185-86. On rebuttal, the prosecutor argued, "There was no dispute over the date. September 23, 1995, homecoming, Evart High School. There was absolutely no evidence introduced to the contrary. That was the dance. That's when this occurred. There is no question about the date." *Id.* at 203.

On November 1, 2001, the jury found the petitioner guilty as charged. The trial court sentenced the petitioner to imprisonment for twenty to seventy years. The petitioner challenged the sufficiency and weight of the evidence in a motion for new trial, but the trial court denied his motion. The Michigan Court of Appeals subsequently affirmed the petitioner's conviction and sentence, and on January 27, 2004, the Michigan Supreme Court denied leave to appeal. *People v. Rauch*, 469 Mich. 999, 674 N.W.2d 378 (2004) (table).

The petitioner filed his habeas corpus petition on December 14, 2004. In his petition, he asserts the following claims:

I.     THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN DEFENDANT'S CONVICTION OF CRIMINAL SEXUAL CONDUCT, WHERE THE AGE OF THE COMPLAINANT WAS UNABLE TO ESTABLISH HER AGE [sic] AT THE TIME OF THE ALLEGED ACT WAS ONLY ESTABLISHED THROUGH THE IMPROPER COMMUNICATION WITH THE WITNESS BY THE PROSECUTOR.

II.    WHERE THE AGE OF THE COMPLAINANT WAS AN ELEMENT OF THE CRIME, WHERE THE COMPLAINANT WAS UNABLE TO

ESTABLISH HER AGE AT THE TIME OF THE ALLEGED ACT, AND THE DATE OF THE ALLEGED ACT WAS ONLY ESTABLISHED THROUGH THE IMPROPER COMMUNICATION WITH THE WITNESS BY THE PROSECUTOR, WAS THE JURY [VERDICT] AGAINST THE GREAT WEIGHT OF THE EVIDENCE, AND THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S POST-JUDGEMENT MOTION FOR A NEW TRIAL.

III.    THE PROSECUTOR VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHERE SHE SPOKE TO THE COMPLAINANT DURING THE OVERNIGHT BREAK IN HER APPEARANCE, RESULTING IN A CHANGE IN THE WITNESS' TESTIMONY; AND WHERE DURING CLOSING ARGUMENT SHE DISTORTED THE FACTS, AND ARGUED FACTS NOT IN EVIDENCE CONCERNING THE DATE THE ALLEGED CRIME WAS SUPPOSED TO HAVE HAPPENED; AND THE TRIAL JUDGE ERRED IN HIS DENIAL OF DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING ON THE FACTS CONCERNING THIS CLAIM.

IV.    DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHERE THE TRIAL COURT DID NOT HOLD THE PROSECUTOR TO THE REQUIREMENT OF NOTICE TO THE DEFENDANT, AND WHERE THE COURT ERRONEOUSLY ALLOWED THE PROSECUTOR TO INTRODUCE EVIDENCE OF BAD CHARACTER BARRED BY MRE 404(b).

V.    DEFENDANT'S SENTENCE OF TWENTY TO SEVENTY YEARS IN PRISON IS DISPROPORTIONATE.

The respondent contends that each of these claims lack merit, but also contends that the petitioner's second, third, fourth, and fifth claims allege violations of state law and are not cognizable on habeas review. The respondent also notes that the second and third claims are unexhausted because the petitioner presented them to the Michigan Supreme Court in a different fashion than he did to the Michigan Court of Appeals, and the third claim was procedurally defaulted.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

The respondent asserts that the petition should be dismissed because it contains unexhausted claims. Federal courts may not grant a habeas corpus petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although normally the failure to exhaust state court remedies requires dismissal of the entire petition, *Lyons v Stovall*, 188 F.3d 327, 333 (6th Cir.1999) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)), the failure to exhaust state remedies is not a bar to adjudication when, as here, the federal claims lack merit, since requiring additional proceedings in state court would waste time and judicial resources. *Ibid.*; *see also* 28 U.S.C. § 2254(b)(2). The Court therefore will excuse the exhaustion requirement in the interest of judicial economy and proceed to address the merits of the petitioner's unexhausted claims.

A.

The petitioner first claims that the evidence was insufficient to sustain the his conviction. The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). A federal court may not reweigh the evidence or redetermine the credibility of the

-9-

witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Therefore, a court reviewing a claim of insufficient evidence on habeas review must accord "deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

The state court of appeals rejected the petitioner's direct appeal on this issue, applying the following standard:

> In reviewing a claim of insufficient evidence, this Court views the evidence de novo in the light most favorable to the prosecutor to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Johnson*, 460 Mich. 720, 723; 597 NW2d 73 (1999); *People v. Kelly*, 231 Mich. App 627, 641; 588 NW2d 480 (1998). However, this Court will not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses. *People v. Wolfe*, 440 Mich. 508, 514-515; 489 NW2d 478, *amended* 441 Mich. 1201 (1992). It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v. Hardiman*, 466 Mich. 417, 428, 646 N.W.2d 158 (2002).

*People v. Rauch*, No. 239148, at 2 (Mich. Ct. App. July 17, 2003). Although the state court did not cite any federal cases, it cited state court precedent that traces the standard used to the Supreme Court's decision in *Jackson*. *Ibid.* (citing *People v. Wolfe*, 440 Mich. 508, 514-15, 489 N.W.2d 748, 751 (1992), *modified* 441 Mich. 1201 (1992) (citing *Jackson*)). The standard used by the Michigan

Court of Appeals accords with the review standard established by the Supreme Court of the United States in *Jackson*. Therefore, under 28 U.S.C. § 2254(d)(1), the petitioner cannot obtain relief on the basis of this claim unless the state court unreasonably applied the *Jackson* standard.

To establish that the petitioner committed first-degree criminal sexual conduct as charged in the information in this case, the prosecutor was required to prove beyond a reasonable doubt that the petitioner sexually penetrated a person who was a member of his household and who was at least thirteen years of age, but less than sixteen years of age. Mich. Comp. Laws § 750.520b(1)(b). The petitioner contends that the evidence was insufficient to establish the victim's age beyond a reasonable doubt. The state court of appeals rejected the petitioner's argument, reasoning:

> On the first day of trial, the victim testified unequivocally that the incident at issue occurred at the end of September or early October 1995. There was no dispute that the incident occurred on the night of a school dance that the victim attended. The victim stated that it could have been homecoming, although she did not know the specific date. She further testified that she went to the dance with two school friends. During cross-examination, in response to defense counsel's questions about her preliminary examination testimony that the incident occurred when she was "about sixteen," the victim explained that she believed she was about to turn sixteen and was fifteen. Defense counsel asked her if it was a possibility that she could have been sixteen, and she responded that it was a possibility.

> On the second day of trial, the victim again unequivocally testified that the incident occurred at the end of September or in early October 1995, stating that her sixteenth birthday was November 13, 1995. She stated that she considered that "about sixteen."

> Although the victim's testimony was more definitive concerning her age and the specific dance on the second day of trial, and she stated that she had talked with the prosecutor about the case the previous night, her testimony that the incident occurred at the end of September or early October 1995 was unchanged. Further, there was testimony from other witnesses establishing that the dance at issue was before the victim's sixteenth birthday. One of the friends that attended the dance with the victim, testified that she recalled the dance, which was the homecoming dance, and it was at the end of September or the beginning of October. The investigating officer testified that she contacted the school and obtained the date of the homecoming dance, which was September 23, 1995. Whether the victim's

testimony of the date of the dance and her age was credible was a matter for the jury. *Id.*; *Wolfe*, supra. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence of the element of age.

*Id.* at 2-3 (footnotes omitted).

The Court finds that the state court's explication of the evidence and its reasoning that the jury acted rationally in light of that evidence properly applies federal law as established by the Supreme Court. Certainly, there was conflicting evidence, and the jury would have acted reasonably in concluding that the victim was older than sixteen years. But the evidence also supported the conclusion that the jury did reach, as the state court of appeals so aptly concluded.

It is true that the complainant testified on direct examination that her date of birth was November 13, 1979, and that she could not recall the exact date of the crime. However, she was able to tie the incident to another event in time that served to establish the date as having been prior to her sixteenth birthday, when considered with other evidence presented to the jury. As recited by the state court of appeals, Ms. Rauch testified that the incident occurred before a school dance, and she stated that it could have been before the homecoming dance. She was not certain that the dance happened before her sixteenth birthday. On cross-examination, she explained that her memory of dates and times was vague, but she thought that the crime occurred in the fall of 1995, most likely at the end of September or early October of 1995, and she reiterated her testimony on redirect examination the next day, albeit after some coaching by the State's attorney.

One of the complainant's childhood friends testified that the autumn dance in 1995 was the homecoming dance. On cross-examination, the witness stated that she and the complainant had discussed the date in question on the previous day of trial when the complainant had tried to confirm when the homecoming dance of 1995 occurred. State Trooper Shelley Izzard subsequently related

unobjected-to hearsay evidence that a school administrator told her that the high school dance in the fall of 1995 occurred on September 23, 1995.

This evidence, when viewed in the light most favorable to the prosecution, was enough to allow the jury to find the age element of the crime beyond a reasonable doubt. Although the complainant was uncertain of the date of the charged act, it was not irrational for the jury to draw the inference urged upon it by the prosecutor and conclude that the crime occurred before the complainant's sixteenth birthday. *See Tinsley v. Million*, 399 F.3d 796, 815 (6th Cir. 2005). The prosecutor was not required to rule out every hypothesis except that of guilt. *See Jackson*, 443 U.S. at 326; *Apanovitch v. Houk*, 466 F.3d 460,488 (6th Cir. 2006). The Court concludes that the state appellate court's finding that there was sufficient evidence to satisfy all the elements of the crime did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### B.

The petitioner next challenges his conviction as being against the "great weight of the evidence," assigning error to the "trial judge's den[ial of] defendant's post-judgement motion for a new trial." In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642, 576 N.W.2d 129, 137 (1998) (internal quotation omitted). This authority is conferred by statute and court rule. *Id.* at 634, 576 N.W.2d at 133 (citing Mich. Comp. Laws § 770.1 and Mich. Ct. R. 6.431(B)). The Michigan Supreme Court noted that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient

evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8, 576 N.W.2d at 133. The petitioner's claim here alleges an error of state law, which is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

## C.

In his third habeas claim, the petitioner alleges prosecutorial misconduct, asserting that the prosecutor manipulated the time frame for the incident in question by speaking with the complainant during an overnight break in the proceedings. The petitioner also alleges that the prosecutor misstated or distorted the facts during closing arguments, and the trial court abused its discretion by denying him an evidentiary hearing on his prosecutorial-misconduct claim. The Michigan Court of Appeals determined that the alleged prosecutorial misconduct did not require reversal of the petitioner's conviction.

Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The first

question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 2977 (2007). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id*. at 516. Flagrancy depends on four factors: 1) whether the actions "tended to mislead the jury or prejudice the defendant"; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender*, 376 F.3d at 528.

It appears undisputed that the state prosecutor held a session with the complainant during an overnight break in the proceedings, which happened to occur between the witness's cross- and redirect examinations. There is no prohibition against an attorney talking to a witness to learn what the witness will say. However, attorneys may not suggest testimony to the witness, particularly in the midst of the witness's examination during trial. It is not entirely clear from the record that the state's attorney coached the witness and suggested testimony during that break. The record indicates that during the first day of trial, the complainant expressed some uncertainly about the date of the charged act and her age at the time. Following an overnight recess, the complainant resumed testifying and claimed that she was absolutely sure the act occurred before her sixteenth birthday. However, although the complainant admitted that she did not know the exact date of the crime, she had previously indicated that the charged act occurred in late September or early October of 1995, and preceded the homecoming school dance. It cannot be said with any certainty, therefore, that the prosecutor manipulated the time frame for the charged act. Moreover, the jury was made aware of the complainant's uncertainty, her knowledge that age was an element of the crime, and her contact with the prosecutor, which was sufficient to permit it to assess the witness's credibility. Therefore,

even if the prosecutor's conduct was improper, it does not appear that the jury could have been misled, and the petitioner was not denied a fair trial.

The petitioner also alleges that the prosecutor misstated or distorted the facts during closing arguments when she told the jury that the act in question occurred on the date of the homecoming dance, which was September 23, 1995, and there was no question about the date and no evidence to the contrary. Once again, the state prosecutor's advocacy technique raises concern, but it does not amount to a due process violation.

"Prosecutors may not express opinions having no basis in the record." *Slagle*, 457 F.3d at 519. However, they may "argue the record . . . and forcefully assert reasonable inferences from the evidence." *Bates v. Bell,* 402 F.3d 635, 646 (6th Cir. 2005). Certainly there was evidence that the crime occurred while the victim was still fifteen years old. Trooper Izzard testified that the crime occurred before the homecoming dance on September 23, 1995, and the complainant did not turn sixteen until the following November. However, contrary to the prosecutor's argument, the issue plainly was not uncontested. Nonetheless, the state court instructed the jury that the arguments of counsel were not evidence, and it is unlikely that the prosecutor's argument itself misled the jury. Because the jurors could have concluded from the evidence that the element of age was proved beyond a reasonable doubt, the prosecutor's misbegotten argument does not rise to the level of a constitutional violation.

Finally, the petitioner alleges that the trial court should have granted his request for an evidentiary hearing on the issue of prosecutorial misconduct. This claim has no merit because errors of state law committed during state post-conviction proceedings are not cognizable on federal habeas review and cannot provide a basis for federal habeas relief. *Roe v. Baker*, 316 F.3d 557, 571 (6th

Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)). Moreover, the record was sufficiently developed to permit the state courts and this Court to assess the petitioner's claim, obviating the need for an evidentiary hearing.

D.

The petitioner alleges next that the trial court deprived him of a fair trial by not enforcing the notice requirement for introducing other acts evidence and by allowing the prosecution to introduce evidence of conduct very different from the charged act. As noted earlier, the State offered evidence through the victim and her girlfriend that the petitioner had engaged in sexually oriented activity with the victim throughout the years, which included provocative conduct, dressing in sexually suggestive clothing, having the victim pose in provocative positions while the petitioner photographed her, showering with her, and getting into bed naked with her. The trial court found this evidence to be proper because he believed that Michigan law allowed those acts to bolster the victim's credibility. Michigan Rule of Evidence 404(b)(2) states that "[t]he prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." The state trial court excused the lack of notice because the petitioner's attorney acknowledged that he was aware of the evidence but not the State's intention to use it at trial. The Michigan Court of Appeals held that the trial judge's relaxation of the state rule's notice requirement was harmless because the petitioner was not surprised by the evidence and he was able to argue the merits of its admissibility when he made an objection to the evidence at trial.

It is well-established that "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)).

The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)).

The Court finds that the lack of formal notice of the prosecution's intent to offer the evidence plainly violated Rule 404(b)(2), but no constitution violation resulted. The Court agrees with the state appellate court's assessment of the lack of harm that flowed from the rule violation, since the petitioner was aware of the evidence, he was able to air his argument as to its inadmissibility, he received a ruling from the trial judge, and he never suggested – either here or in the state court – that the lack of notice deprived him of the opportunity to meet the other acts evidence with counter-proof of his own.

The petitioner also argues that the admission of prior "bad acts" resulted in the denial of a fair trial because the jury could have concluded he was guilty of the charged crime on the basis of evidence that he committed prior bad acts. The reasoning of the state trial court – that the evidence was admissible to bolster the victim's credibility – does not comport with logic or state evidence laws. Allowing a victim to make allegations that the defendant engaged in repeated acts of abuse does little to enhance the victim's credibility and it is not a proper purpose for the evidence under Michigan Rule of Evidence 404(b). However, the court of appeals's reasoning justifies admitting the evidence:

[T]here was a common basis underlying the activity in this case, i.e., that defendant provided gifts and privileges in exchange for compliance.

. . .

Defendant . . . argues that the probative value of the challenged evidence was substantially outweighed by the danger of unfair prejudice and should have been excluded because the "barrage of claims" permitted by the court was extraneous to the charged fellatio. Defendant contends that the friend's testimony was "removed" from the actual sexual acts and much of the victim's testimony confused matters of clothing, gifts, money, all part of normal family relationships, with her claims of sexual acts.

Contrary to defendant's claim, the girls' testimony was highly probative of a continuing course of conduct by defendant, given his general denial of the allegations and his theory that the victim was manipulated by her boyfriend into making a false allegation of oral sex.

*People v. Rauch*, No. 239148, 2003 WL 21675888 at *5 (Mich. Ct. App. July 17, 2003).

The petitioner's contention that the evidence tended to establish propensity, which would have been an impermissible purpose for the evidence under state law, does not further his constitutional argument. The United States Supreme Court has never held that evidence tending to prove criminal propensity violates due process. *See Estelle*, 502 U.S. at 75 n. 5. In fact, such evidence is allowed in sexual assault cases under the Federal Rules of Evidence. *See* Fed. R. Evid. 413. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. In addition, the petitioner has failed to show that the trial court's decision to admit this evidence resulted in any other violation of his constitutional rights. The petitioner is not entitled to habeas corpus relief with respect to this claim.

E.

The petitioner's final claim is that the sentence of twenty to seventy years was disproportionate and an abuse of the trial court's discretion. The petitioner asserts that he was sentenced at the top of the sentencing guidelines range despite his stability, his sense of responsibility at home and at work, and the absence of a criminal record, except for a twenty-year-old misdemeanor conviction. The Michigan Court of Appeals concluded on review of this claim that the trial court did not abuse its discretion in sentencing the petitioner.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eighth Amendment grounds faces a formidable challenge. Generally, he may obtain relief only by demonstrating that a state court decision contravened or misapplied 'clearly established' Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Ibid*. Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Ibid*. The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73.

In *Lockyer*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes"

law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer*, 538 U.S. at 72-77.

A plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin*, 501 U.S. at 965. As the Supreme Court observed in *Lockyer*, it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001) (citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of

parole.  His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison, and passing a forged check for $28.36, a crime punishable by two to five years in prison.  The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment.  Similarly, in *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.  The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment.  However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes.  By contrast, in 2003, the Supreme Court reaffirmed *Rummel* and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony conviction.  *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).  The Michigan courts' determination that a sentence of twenty to seventy years for first degree criminal sexual conduct was not disproportionate is not an unreasonable application of this Supreme Court precedent.

Michigan law allowed a prison term of life imprisonment or any number of years.  Mich. Comp. Laws § 750.520b(2).  The challenged sentence fell within the sentencing guidelines and within the maximum sentence set by state law.  The Michigan Court of Appeals noted that the petitioner presented no unusual circumstances from which the trial court could conclude that his sentence violated the principles of proportionality.  The court of appeals stated that a defendant's employment, lack of criminal history and minimum culpability were not unusual circumstances that overcame the presumption of proportionality.  "[A] sentence within the statutory maximum . . .

generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (citation omitted). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at 301 (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)).

The petitioner's sentence of twenty to seventy years for first-degree criminal sexual conduct was not grossly disproportionate and therefore did not violate the Eighth Amendment. The state court's conclusion that the trial court did not abuse its discretion at sentencing was not contrary to or an unreasonable application of Supreme Court precedent.

III.

The petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 9, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 9, 2008.

s/Felicia M. Moses
FELICIA M. MOSES